UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARLENE LYNDES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>v.<br><br>ROADRUNNER TRANSPORTATION SYSTEMS, INC., MARK A. DIBLASI, PETER R. ARMBRUSTER, AND SCOTT D. RUED,<br><br>    Defendants. | Case No.:<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Darlene Lyndes ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Roadrunner Transportation Systems, Inc. ("Roadrunner" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.    This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased or otherwise acquired the securities of Roadrunner from July 30, 2015 to October 26,

1

2015, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of the federal securities laws.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Defendants conduct business in this District, has an office in this District, and a significant portion of the Defendants' actions and the subsequent damages, took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the attached Certification, acquired Roadrunner securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Roadrunner provides asset-light transportation and logistics services. Roadrunner is a Delaware corporation headquartered in Cudahy, Wisconsin and maintains an

office at 46-60 55th Ave, Maspeth, New York 11378. Its common stock trades on the NYSE under the ticker symbol "RRTS."

8. Defendant Mark A. DiBlasi ("DiBlasi") has served as the Company's President and Chief Executive Officer ("CEO") throughout the Class Period.

9. Defendant Peter R. Armbruster ("Armbruster") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10. Defendant Scott D. Rued ("Rued") has served as the Company's Chairman of the Board throughout the Class Period.

11. The defendants referenced above in ¶¶ 8–10 are sometimes referred to herein as the "Individual Defendants."

12. Defendant Roadrunner and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

13. Roadrunner is purportedly a leading asset-light transportation and logistics service provider offering a full suite of solutions, including truckload logistics, customized and expedited less-than-truckload, transportation management solutions, intermodal solutions (transporting a shipment by more than one mode, primarily via rail and truck), freight consolidation, inventory management, on-demand expedited services, international freight forwarding, customs brokerage, and comprehensive global supply chain solutions.

14. The Company has three operating segment: (1) truckload logistics ("TL")—the pickup, delivery, freight consolidation and inventory management of TL freight; (2) less-than-truckload ("LTL")—the pickup, consolidation, linehaul, deconsolidation, and delivery of LTL shipments throughout the United States and into Mexico, Puerto Rico, and Canada; and (3) transportation management solutions ("TMS")—a "one-stop" domestic and international transportation and logistics solution, including access to the most cost-effective and time-sensitive modes of transportation within its broad network.

15. On December 19, 2014, the first case of avian influenza subtype H5N2 in the United States was identified in a mixed poultry flock in Douglas County, Oregon. Subsequently, an outbreak of avian influenza subtype H5N2 was identified in a series of chicken and turkey farming operations in the Midwestern region of the United States.

16. On March 2, 2015, the Company filed an annual report on Form 10-K with the SEC for the quarter and fiscal year ended December 31, 2014 (the "2014 10-K"), which was signed by Defendants DiBlasi and Armbruster. The 2014 10-K set forth the following risk factors:

- One or more significant claims or the cost of maintaining our insurance could have an adverse effect on our results of operations.
- Increased insurance premium costs could have an adverse effect on our results of operations.
- The cost of compliance with, liability for violations of, or modifications to existing or future governmental regulations could adversely affect our business and results of operations.
- Our operations are subject to various environmental laws and regulations, the violation of which could result in substantial fines or penalties.
- A decrease in levels of capacity in the over-the-road freight sector could have an adverse impact on our business.
- We may not be able to successfully execute our acquisition strategy, and any acquisitions that we undertake could be difficult to integrate, disrupt our business, dilute stockholder value, and adversely affect our results of operations.
- We may have difficulties integrating acquired companies.
- We may not successfully manage our growth.
- Our international operations subject us to operational and financial risks.
- Our indebtedness could adversely affect our business and limit our ability to expand our business or respond to changes, and we may be unable to generate sufficient cash flow to satisfy our debt service obligations.
- Our senior credit facility contains financial and other restrictive covenants with which we may be unable to comply. A default under these financing arrangements could cause a material adverse effect on our liquidity, financial condition, and results of operations.
- Fluctuations in the price or availability of fuel and limitations on our ability to collect fuel surcharges may adversely affect our results of operations.
- A significant or prolonged economic downturn in the over-the-road freight sector, or a substantial downturn in our customers' business, could adversely affect our revenue and results of operations.

- We operate in a highly competitive industry and, if we are unable to adequately address factors that may adversely affect our revenue and costs, our business could suffer.
- Our executive officers and key personnel are important to our business, and these officers and personnel may not remain with us in the future.
- Our reliance on ICs to provide transportation services to our customers could limit our expansion.
- Our third-party carriers must meet our needs and expectations, and those of our customers, and their inability to do so could adversely affect our results of operations.
- If our ICs are deemed by regulators to be employees, our business and results of operations could be adversely affected.
- Our financial results may be adversely impacted by potential future changes in accounting practices.
- We rely heavily on information and technology to operate our transportation and business networks, and any disruption to our technology infrastructure or the Internet could harm our operations and our reputation among customers.
- Seasonal sales fluctuations and weather conditions could have an adverse impact on our results of operations.
- Terrorist attacks, anti-terrorism measures, and war could have broad detrimental effects on our business operations.
- Our TL business derives a portion of its revenues from inventory management, the loss of which could have a negative impact on our financial condition, results of operations, and cash flows.
- Our ability to raise capital in the future may be limited, and our failure to raise capital when needed could prevent us from achieving our growth objectives.
- Our total assets include goodwill and intangibles. If we determine that these items have become impaired in the future, our earnings could be adversely affected.
- If we are unable to expand the number of our sales representatives, or if a significant number of our existing sales representatives leave us, our ability to increase our revenue could be negatively impacted.
- Changes in our relationships with our significant customers, including the loss or reduction in business from one or more of them, could have an adverse impact on us.
- The market value of our common stock may fluctuate and could be substantially affected by various factors.
- Our current principal stockholders continue to have significant influence over us, and they could delay, deter, or prevent a change of control or other business combination or otherwise cause us to take action with which you might not agree.

5

- Provisions in our certificate of incorporation, our bylaws, and Delaware law could make it more difficult for a third party to acquire us, discourage a takeover, and adversely affect existing stockholders.

17. On June 1, 2015, *The Des Moines Register* reported that nearly 45 million birds in 15 states have been destroyed due to the avian flu outbreak.

## Materially False And Misleading Statements

18. On July 29, 2015, the Company issued a press release entitled "Roadrunner Transportation Systems Reports Second Quarter 2015 Results and Announces Third Quarter 2015 Guidance." The press release contained guidance for the third quarter of 2015, stating in relevant part:

Third Quarter 2015 Guidance

Commenting on guidance for the third quarter of 2015, Peter Armbruster CFO of Roadrunner, said, "We anticipate our revenues for the third quarter of 2015 to be in the range of $530 million to $555 million. We expect diluted earnings per share available to common stockholders, excluding acquisition transaction expenses, to be between $0.43 and $0.47."

19. On August 3, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2015 (the "Q2 2015 10-Q"), which was signed by Defendants DiBlasi and Armbruster. The Q2 2015 10-Q stated the following with regards to the Company's risk factors:

ITEM 1A. RISK FACTORS.

An investment in our common stock involves a high degree of risk. You should carefully consider the factors described in our Annual Report on Form 10-K for the year ended December 31, 2014 in analyzing an investment in our common stock. If any such risks occur, our business, financial condition, and results of operations would likely suffer, the trading price of our common stock would decline, and you could lose all or part of the money you paid for our common stock. In addition, the risk factors and uncertainties could cause our actual results to differ materially from those projected in our forward-looking statements, whether made in this report or other documents we file with the SEC, or our annual report to stockholders, future press releases, or orally, whether in presentations, responses to questions, or otherwise.

> *There have been no material changes to the Risk Factors described under "Part I - Item 1A. Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2014.*

(Emphasis added).

20. The statements referenced in ¶¶ 18-19 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the avian flu epidemic would have an adverse impact on the Company's financial condition; and (2) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

21. On August 7, 2015, Defendant Rued sold 2,000,000 Roadrunner shares through various investment entities at $24.34 per share for proceeds of over $48,000,000.

22. On October 26, 2015, the Company issued a press release during after-hours trading entitled "Roadrunner Transportation Systems Announces Revised Guidance for Third Quarter 2015 and Guidance for Fourth Quarter 2015." The press release contained a lower guidance for the third quarter of 2015, stating in relevant part:

> *Based on currently available information, the company anticipates revenues for the third quarter of 2015 to be in the range of $490 million to $500 million and expects diluted earnings per share available to common stockholders, excluding transaction expenses, to be between $0.14 and $0.17. The reduction in the third quarter 2015 guidance reflects the following items:* losses associated with the termination of certain independent contractor lease purchase guaranty programs, which are expected to have an impact of $0.08 per share; and charges associated with increased accidents and a corresponding increase in insurance and claims expense, which are expected to have an impact of $0.06 per share; and ***continuing soft demand for TL, LTL, and intermodal services from customers in selected industrial sectors.***

> Mark DiBlasi, President and CEO of Roadrunner, said, "Although certain parts of our business, such as OEM and international, realized expected business levels

during the quarter, *our TL, LTL, and intermodal services saw continuing soft demand from customers.* Historically, the third quarter starts slow and finishes strong. In 2015, July volumes were weaker than normal, and we did not see the typical rebound in August and September, resulting in lower volumes than anticipated. *Our TL segment is heavily weighted toward refrigerated food items, which were impacted by lower than expected poultry, beef and produce freight due to the recent Midwest and West Coast droughts and the bird flu epidemic.* Intermodal volumes were also lower than anticipated, especially in the West Coast ports. Our LTL segment was impacted by an overall weak economic climate in the markets we serve, as well as aggressive pricing activity, particularly in September. Finally, excess capacity during the quarter put downward pressure on non-contractual pricing across all of our segments, particularly spot market pricing and certain LTL pricing.

(Emphasis added).

23. On this news, the Company's shares fell $8.33 per share or over 47% from its previous closing price to close at $9.34 per share on October 27, 2015, damaging investors.

24. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Roadrunner securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Roadrunner securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class

8

may be identified from records maintained by Roadrunner or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Roadrunner;
- whether the Individual Defendants caused Roadrunner to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Roadrunner securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

9

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Roadrunner securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Roadrunner securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

32. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## NO SAFE HARBOR

34. Roadrunner's "Safe Harbor" warnings accompanying its reportedly forward looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, they are excluded from the protection of the statutory Safe Harbor. See 15 U.S.C. §78u-5(b)(2)(A).

35. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Roadrunner who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Roadrunner securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Roadrunner securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

39. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Roadrunner securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Roadrunner's disclosure controls and procedures.

40. By virtue of their positions at Roadrunner, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

41. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Roadrunner, the Individual Defendants had knowledge of the details of Roadrunner's internal affairs.

42.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Roadrunner. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Roadrunner's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Roadrunner securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Roadrunner's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Roadrunner securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

43.     During the Class Period, Roadrunner securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Roadrunner securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Roadrunner securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Roadrunner securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

44.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

45. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. During the Class Period, the Individual Defendants participated in the operation and management of Roadrunner, and conducted and participated, directly and indirectly, in the conduct of Roadrunner's business affairs. Because of their senior positions, they knew the adverse non-public information about Roadrunner's operations, current financial position and future business prospects.

48. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Roadrunner's business practices, and to correct promptly any public statements issued by Roadrunner which had become materially false or misleading.

49. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Roadrunner disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Roadrunner to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Roadrunner within the meaning of Section 20(a) of the Exchange Act.

In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Roadrunner securities.

50. Each of the Individual Defendants, therefore, acted as a controlling person of Roadrunner. By reason of their senior management positions and/or being directors of Roadrunner, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Roadrunner to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Roadrunner and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

51. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Roadrunner.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 17, 2015   Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

**GOLDBERG LAW PC**
Michael Goldberg, Esq.
13650 Marina Pointe Dr. Suite 1404
Marina Del Rey, CA 90292
Phone: 1-800-977-7401
Fax: 1-800-536-0065

Counsel for Plaintiff